**In re NOBLE.**

No. 10968.

District Court, D. Colorado.

Dec. 18, 1941.

Shuteran & Robinson, of Denver, Colo., for creditor.

John W. Shireman, and Thomas K. Hudson, both of Denver, Colo., for bankrupt.

SYMES, District Judge.

Ralph Royce Noble was adjudicated a bankrupt on March 7, 1941, on his voluntary petition. The first meeting of creditors was held on May 7, 1941. There being no assets, no trustee was appointed. He was granted permission to file in forma pauperis.

At the first meeting of creditors he was examined by the attorney for the Beneficial Loan Company, which thereafter, on May 10th, filed its claim for $71.21, balance claimed to be due on his promissory note dated July 3, 1940, asserting that said sum was obtained by the bankrupt on materially false statements made at the time the loan was consummated, on which the creditor relied. The referee allowed the claim as a general unsecured claim on May 23, 1941.

Thereafter the creditor filed a suit in the state court against the bankrupt, and obtained a judgment by default for $100 and costs and garnisheed his wages. The bankrupt reported this garnishment to the bankruptcy court on August 27, 1941, and the referee made an order enjoining and restraining the said loan company from prosecuting the garnishment in the state court, and directing it to release the garnishment, or show cause why it should not do so, on August 28, 1941.

On said day the company filed its answer to the order to show cause, alleging that neither the referee nor the court in bankruptcy had jurisdiction to restrain it to cease prosecution of the said levy or garnishment, or to require it to release the aforesaid garnishment, for the reason that the bankrupt had published to the Beneficial Loan Company, plaintiff in the state court, a materially false statement in writing respecting his financial condition, and that his liability owed to the said company was not dischargeable in bankruptcy, because it was a liability for obtaining money by false pretenses. That the bankrupt had been duly served in the state court suit, the judgment entered, no appeals taken therefrom, and execution duly issued.

Upon due hearing the referee found no fraud was practiced by the bankrupt in the procurement of its loans from the said, the Beneficial Loan Company, by the furnishing of said financial statement, or otherwise. Further the referee found said company did not rely upon the so-called financial statement furnished by the bankrupt, and the said financial statement was procured under such circumstances that the said loan company was not justified in relying thereon, and the facts stated in the complaint filed in the state court action were not true, and the debt evidenced by the note attached to the claim filed in the bankruptcy proceedings by the said, the Beneficial Loan Company, is dischargeable in bankruptcy, and the said, the Beneficial Loan Company, could be permanently restrained and enjoined from enforcing, or attempting to enforce, the judgment rendered in the state court action. It was therefore ordered that the said loan company be permanently enjoined from enforcing, or attempting to enforce, the judgment rendered in its suit in the state court suit.

The said loan company brought the matter here on petition to review said order restraining it from enforcing its judgment obtained in the state court.

■ Rule 47 of General Orders, 11 U.S.C.A. following section 53, provides that the judge shall accept the findings of fact of a referee, unless clearly erroneous. We therefore accept and consider this court bound by the findings of the referee that no fraud was practiced by the bankrupt in the procurement of the loan involved, and that the creditor did not rely upon the

so-called financial statement furnished by the bankrupt, and the further finding that the loan company was not justified in relying thereon, especially as there was no evidence to the contrary. In fact the testimony of the bankrupt as to his conversation with the creditor's attorney as he left the courtroom in the Federal Building after the first meeting of creditors, smacks of intimidation and threats on the part of the attorney.

The record discloses that the complaint in the state court did not ask for a body judgment—a remedy granted in cases of fraud or misrepresentation.

The question presented on this petition for review is: Can a creditor whose claim is listed in the bankrupt schedules ignore the bankruptcy court and sue in the state court, when he believes his claim is not dischargeable under § 17 of the Bankruptcy Act, 11 U.S.C.A. § 35; particularly whether the existence of such belief on the part of the creditor is all that is necessary to deprive the bankruptcy court of jurisdiction and power to enjoin prosecution of the state court suit commenced by such creditor when, after a hearing, the referee has decided the debt is one dischargeable in bankruptcy?

The bankrupt made a financial statement to petitioner's manager, which the latter knew did not show all his debts, he being told to list only debts incurred since the date of a former statement which the company already had in its files. Therefore, it was possible to frame a fraud complaint in the state court, which had the appearance of regularity. So doing, and the bankrupt not having an attorney, a default judgment followed.

■■■ The whole theory of bankruptcy and the validity and priority of claims and the powers of bankruptcy courts to exercise equity powers has been declared in a late case, Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. It states that in the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate, and directs bankruptcy courts to disallow or subordinate claims, if equity and fairness so require. The case further holds that the merger of a claim into a judgment does not change its nature so far as its provability in bankruptcy is concerned, and that the bankrupt-

cy court may look behind the judgment to the essence of the liability.

■■■ In Seaboard Small Loan Corporation v. Ottinger, 50 F.2d 856, at page 859, 77 A.L.R. 956, the Circuit Court of Appeals of the Fourth Circuit, speaking through Judge Parker said: "In view of this purpose of the act and of the express provision that the bankrupt shall be released from all provable debts, it would be indeed a strange situation if the court vested with jurisdiction to enforce the act were without power to stay the hand of a creditor whose debt has been discharged by bankruptcy, but who nevertheless persists in harassing the bankrupt with efforts to collect it. It will not do to say that the bankrupt has an adequate remedy at law by pleading the discharge in case of suit, or by suing an employer if the latter withholds wages under an order such as that here. Such remedy is not adequate, because its assertion involves trouble, embarrassment, expense, and possible loss of employment. A laboring man who had availed himself of the benefits of the act would in many cases prefer to pay a debt discharged by bankruptcy rather than hazard his employment by bringing suit for wages withheld under notice like that with which we are dealing. And an employer in many cases would prefer to discharge an employee against whom a claim had been filed rather than engage in litigation with the claimant. The demand under an assignment order, in an effort to collect a debt, discharged by bankruptcy, is nothing less than an attempt to circumvent the order discharging same and to deprive the bankrupt of the benefit of that order. It was to meet situations such as this that the bankruptcy court was vested with the general power under section 2, subsection 15 of the Bankruptcy Act (11 U.S.C.A. § 11(15) to 'make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title.' As said by Judge Van Valkenburgh in the Swofford Bros. Dry Goods Co. Case (D. C.) 180 F. 549, 553: '* * * This section may be availed of to compel anything which ought to be done for, or to prevent anything which ought not to be done against the enforcement of the law.' "

This apparently gives the federal court in bankruptcy power to restrain litigation in the state court when necessary to pre-

serve to the bankrupt the benefits of his adjudication.

See, also, Avery v. Avery, 6 Cir., 114 F.2d 768, at page 770, that such a holding was not contrary to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The Court of Appeals of the Second Circuit, In re Devereaux, 76 F.2d 522, held that the bankruptcy court has jurisdiction in equity to determine whether a bankrupt's discharge is a bar to a provable debt, but is not bound to exercise such authority. Citing Local Loan Company v. Hunt, 292 U.S. 234, at page 239, 54 S. Ct. 695, at page 697, 78 L.Ed. 1230, 93 A.L.R. 195, wherein the Supreme Court said: "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled."

And, at page 240 of 292 U.S., at page 697 of 54 S.Ct., 78 L.Ed. 1230, 93 A.L.R. 195: "These principles apply to proceedings in bankruptcy." The Supreme Court then goes on to point out that courts of bankruptcy are essentially courts of equity, and says at page 244 of 292 U.S., 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, the purpose of the act is of public as well as private interest, and gives the honest, but unfortunate debtor who surrenders for distribution the property he owns at the time of bankruptcy, a new opportunity and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt, and that the act was adopted, and is to be construed, so as to effectuate that general policy and purpose.

In re Metz, 6 F.2d 962, the Circuit Court of Appeals of the Second Circuit held it was the duty of the District Court to inquire into the nature of the cause of action and the character of the judgment obtained, and with such knowledge determine whether a debt was dischargeable, and inquire whether a stay should be granted.

In Sims v. Jamison, 67 F.2d 409, the Circuit Court of Appeals for the Ninth Circuit held the bankruptcy court has the primary and superior jurisdiction to determine the effect of its own decree of discharge, citing the Small Loan Corporation v. Ottinger, supra, and saying at page 411 of 67 F.2d: "We conclude that the trial

court had jurisdiction to decide whether or not the discharge in bankruptcy relieved the bankrupt of the debt and consequently of the claimed lien on which the actions were brought against him in the state court."

The nearest case on the facts to the one at bar is Personal Finance Co. of Louisiana v. Thomas, 167 So. 475, decided by the Court of Appeal of Louisiana. There, on facts very similar to those we are considering, it was held a creditor having a claim against an adjudicated bankrupt seeking discharge of debt, must litigate that question in the bankruptcy court, especially where the creditor has asserted his claim in the bankruptcy proceedings. That a creditor having asserted his claim against the debtor in the bankruptcy proceedings, held not entitled to maintain a suit in the state court against the bankrupt debtor after the debtor's adjudication in bankruptcy, but prior to his discharge on the ground that the loan was obtained by the debtor by fraudulent representations, and that hence the debt was not dischargeable in bankruptcy. The whole opinion is very enlightening on our situation.

█ Furthermore, the burden of proof is upon the creditor who claims his debt is excepted from the operation of the discharge in bankruptcy, because of a false representation or pretense. Collier on Bankruptcy, 14th Ed., Vol. 1, p. 1608.

█ The Bankruptcy Act is a remedial statute intended for the relief of debtors, and therefore is to be construed strictly, so that all debts except those coming exactly within the exception will be discharged. Gleason v. Thaw, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717. And "A false statement on which a bankrupt obtained money or property on credit, which will bar his discharge, under Bankruptcy Act, * * * must be a financial statement, as distinguished from a mere misrepresentation." In re Morgan, 2 Cir., 267 F. 959.

█ And according to Collier on Bankruptcy, 14th Ed., Vol. 1, p. 1602, fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient, and the false representations referred to in § 17, must have been knowingly and fraudulently made before a discharge can be refused. And what is important in the case at bar is the holding in

International Harvester Co. v. Carlson, 8 Cir., 217 F. 736, that a creditor who misleads a bankrupt into signing a statement which omits debts after the latter has orally disclosed them, cannot rely upon the omission as grounds for refusing the discharge. This is important in view of the fact as found, and we are bound by the finding, that there was no fraud or misrepresentation intentionally practiced by the bankrupt.

■ It would therefore seem that the loan company is not in a position to claim that its debt was not discharged by the adjudication in bankruptcy. See, also, Underwood v. Ajax Rubber Co., Tex.Civ. App., 296 S.W. 964, to the effect that a creditor cannot hold a debtor subsequently to his discharge in bankruptcy because of omission of existing debts from the bankrupt's financial statement to the creditor, where the creditor actually knew of the debts when it approved the application for credit.

■ Referring to the testimony of the bankrupt, there is no contradiction of his testimony as to the circumstances under which he signed the second note. Upon being asked to fill out a statement he asked if he could see his first statement, because he had no means of knowing the bills he had previously listed. But it was not produced for his examination and he was told it was not really important. Then, later, at the time of the first meeting in bankruptcy when he left the courtroom in the Federal Building, he had a conversation with the attorney for the loan company which makes interesting reading. The attorney invited him to his office to straighten the thing out, and when he stated he was willing to abide by what the court told him to do, counsel told him he was going to be sued and that he had better come up and see the attorney and straighten the thing out before it cost him a whole lot of time and money. And later when served with summons and complaint in the state court action he was advised to pay no attention to it. And still later, in a conversation with the attorney, the latter advised him in effect that the position of the bankruptcy court was wrong, and that the referee had been defeated on this question twice before, and his wages could be tied up by garnishments every week, and that in the long run everything would be charged back to him. Counsel should read and bear in mind § 29, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 52, sub. b, especially subdivision 5.

The question really presented on this appeal is whether we can take judicial notice of the fact disclosed in so many of these bankruptcy cases, wherein these loan companies secure the bankrupt's signature to a financial statement without the latter appreciating the importance of the same, and often on representations that it doesn't amount to much and is only a formality, and then after bankruptcy and the granting of a discharge, go into the state court and, disregarding the bankruptcy proceedings, obtain a judgment, generally by default, and garnishee the poor bankrupt and thus, in effect, render nugatory his discharge.

If the referee was wrong in his finding and decision, then these loan companies have at last discovered a very effective means of collecting their debts and defying the bankruptcy court, and the latter may as well close up.

■ The brief for the loan company cites cases from New York and one from Illinois, to the effect that the bankruptcy court has no control over the creditor or his right to bring an action in the state court, when the creditor believes the claim is covered by § 17 and not dischargeable. That seems to be the rule in those jurisdictions. However, the great weight of authority, including late cases, such as Pepper v. Litton, supra, and others, sustain the right of a bankruptcy court to examine into the character of all claims and decide for itself whether or not they are not dischargeable under § 17 of the Act, and may prevent the creditor from garnisheeing wages earned after bankruptcy to pay a debt incurred before bankruptcy.

In 8 C.J.S., Bankruptcy, p. 1428, § 521 (5), it is said: "The misstatement must be knowingly and intentionally made."

And "* * * must be shown to be intentionally or knowingly so" and with "an intention to mislead."

And 8 C.J.S., Bankruptcy, § 521(7), p. 1431: "In granting credit, the creditor must have done so in reliance on the false statement."

It must be borne in mind that this record is wholly devoid of any evidence offered by the Beneficial Loan Company that brings the facts within any of the above requirements, or those of petitioner's authorities.

In conclusion: I prefer the majority rule sustained by the weight of authority, so broadly discussed and applied in Pepper v. Litton, supra, and other authorities herein discussed.

The referee should be, and is, affirmed.