55534. CANAL INSURANCE COMPANY v. P & J TRUCK LINES, INC. et al.

DEEN, Presiding Judge.

This is an action on a policy of insurance on a 1972 International Harvester tractor and attached Fruehauf semi-trailer van which burned while en route to its destination loaded with some 250,000 eggs. The policy shows the named insured to be "P & J Truck Line, Inc." which was a corporation formed by Paul Thompson and Andrew Williams, Thompson being the sole stockholder at the time this complaint was filed. At the time of the loss the tractor carried a State of Georgia title registration in the name of Williams dated January 16, 1974, and showing a purchase date of November 5, 1973. The application for insurance is dated January 17, 1974, and the loss occurred on April 28, 1974. The insurer denied liability. Thompson and the corporation jointly filed a

complaint; the issues were heard by the court without a jury and judgment entered in favor of the plaintiffs as their interests may appear. The defendant appeals.

1. The first four enumerations of error attack the form of the judgment. Quoting 5A Moore's Federal Practice, § 52-06[1], *Doyal Dev. Co. v. Blair,* 133 Ga. App. 613 (1) (211 SE2d 642) (1974) held that where the detailed findings of fact (and also conclusions of law) are quite sufficient for review the case will not be remanded to cure merely formal defects. It is clear from the judgment here what issues have been disposed of, and in what manner.

2. Did P & J Truck Lines, Inc. have an insurable interest in the tractor and trailer in view of the fact that the Georgia certificate of title was made out in the name of Williams, who had failed to have it transferred prior to the wreck? The uncontradicted testimony is to the effect that Williams represented to Thompson that he owned the unit and could buy or lease others, and that he could generate sufficient business, driving one of the rigs and obtaining drivers for the others, to make a substantial profit, but that he did not have a sufficient capital outlay to start a new business. Thompson agreed to supply working capital, had the P & J Truck Lines, Inc. formed for the purposes of the business, and borrowed $12,000 from the C & S Bank which was paid over to Williams to represent Thompson's half interest in the business. Williams then placed the rig at the service of the corporation which commenced using it for hauling contracts. Williams and Thompson both signed the lien pledging the outfit as collateral for the bank loan. They operated under an oral agreement that the owner of the rig was the corporation, which had been formed for that purpose; however, being informed by telephone that the new corporation was legally existent they took out the insurance policy in its name prior to actually transferring the title certificate, and this element of the agreement had not been taken care of at the time of the wreck.

" 'Insurable interest' . . . means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Code § 56-2405. Upon a transfer of ownership it is required that

the transferor deliver a sworn assignment and warranty of title to the transferee on the certificate of title and until this is done, *except as between the parties,* the transferee obtains no interest in the vehicle. Code § 68-415a. Title passes, however, when the transferor completes his performance with reference to physical delivery of the goods. Code § 109A-2—401 (2). Cf. *Rockwin Corp. v. Kincaid,* 124 Ga. App. 570 (184 SE2d 509) (1971); *Marshall v. Universal CIT Credit Corp.,* 121 Ga. App. 751 (175 SE2d 84) (1970). "The Motor Vehicle Certificate of Title Act provides an additional method whereby title to motor vehicles can be proven but did not change the existing law as to the manner in which ownership of chattels including automobiles can be proven." *Hightower v. Berlin,* 129 Ga. App. 246 (3) (199 SE2d 335) (1973). P & J Truck Lines, Inc. had an insurable interest in the tractor and trailer.

3. It is contended that the trial court erred in not declaring the policy void due to misrepresentation, since it appeared on the trial of this case that on the application for insurance only the loan of the C & S Bank, taken out by Thompson and on which the rig was collateral, was listed as a lien, whereas prior to purchase by Williams there were liens owing to both International Harvester and Fruehauf. Thompson testified positively that he knew nothing of these liens; that he did know of one check written by Williams to Fruehauf which Williams told him was the last payment due that entity. He further testified to his conviction that Williams was acting in good faith and knew of no other amounts which would constitute liens against the tractor or trailer. In the absence of contrary evidence, this testimony was sufficient, if believed by the trial judge, to warrant a finding that any misrepresentation as to the existence of prior liens in the application was innocent. Under Code § 56-2409, relating to misrepresentations in applications for insurance (whether attached to the policy or not) "shall not prevent a recovery under the policy or contract unless" fraudulent, material to the acceptance of the risk, or such that the insurer would not have provided coverage at the stated premium rate if it had known the true facts. This section has been the subject of much construction, but it is now

clearly established that even if the second or third exception is proved, the trior of fact should not hold the policy void if it appears that the applicant was in good faith in completing the application. In *United Family Life Ins. Co. v. Shirley,* 144 Ga. App. 722, 725 (1978); *All American Life &c. Co. v. Saunders,* 125 Ga. App. 7 (186 SE2d 328) (1971) and like cases holding that the innocence of the misrepresentation was irrelevant were overruled "insofar as they treat responses to insurance applications as warranties, totally disregarding the applicant's good faith (i.e. knowledge) once the falsity and materiality of the representation is proved." Enumeration of error 7 is without merit. We are all the clearer in this view of the matter in that there was no evidence to show knowledge on the part of either incorporator, except for the single check payment to Fruehauf, and as to that there is no evidence as to whether or not Williams (who did not testify on the trial) was aware of the outstanding balance. No foreign liens have been perfected under Code § 68-421a (c) (5), which is the sole method of establishing the same in this state. Nor has any foreign lienholder, if existent, intervened to claim any proceeds of this action. It is therefore obvious that nothing occurred which increased the risk of the appellant insurer. As between the plaintiff corporation on the one hand, and the individual plaintiff and his associate on the other, ownership was transferred to the corporation. The insurer is not a third party given the right to contest such ownership; it merely insured whatever insurable interest the corporation in fact had as a result of the transfer.

4. The appellant further contends the policy is void under the following policy provision: "Exclusion:. . . (b) Under any of the coverages, if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy." We apply to this provision the same construction which was given the section on misrepresentations made in the application. There was no way the plaintiff could have declared the liens in the application for insurance, or when the completed policy

was eventually mailed to the insured, if the applicant had no knowledge that the liens in favor of Fruehauf and International Harvester existed. The appellant's argument that Williams *knew* such liens existed and failed to declare them is unsupported by the evidence which, as we have pointed out, does not demand a finding of such knowledge on the part of either incorporator. The encumbrance in favor of the C & S Bank is of course listed and is not involved here.

Exclusions such as the one relied upon here have a fairly ancient history. When it appears that the owner places a lien on the property after the insurance contract is entered into and fails to notify the insurer, or conceals the fact from the insurer that a prior lien or other encumbrance has been placed on the property, a forfeiture may result. *Curtis v. Girard Fire &c. Ins. Co.*, 62 Ga. App. 28 (7 SE2d 433) (1940); St. Paul Fire &c. Ins. Co. v. Peck, 139 Pac. 117 (1914). The reason for such rulings is set out in *Alston v. Phenix Ins. Co.*, 100 Ga. 287, 289 (27 SE 981) (1895): "The making and delivering of a mortgage upon insured property is regarded as a 'moral hazard'; it tends to lessen the interest of the mortgagor in the safety and preservation of the property. When a person insures property which is incumbered or which he afterwards incumbers, 'there will sometimes exist a dangerous temptation to withhold protection to such a degree as to invite accident, and this may frequently be done without a conscious intent of wrong-doing on the part of the insured' . . . The main object seems to be not to permit the insured to do an act without the consent of the insurer, which will tend to increase the hazard or risk by lessening the interest of the insured in the preservation of the property." In that case it was held that a subsequent lien created by one partner to another was, not within the meaning of the exclusion. It is frequently held that when the reason for the rule fails, the rule fails. Regardless of the right to declare a forfeiture under this exclusion where the insured is aware of a prior lien or creates a subsequent one without divulging the fact, the rule cannot apply where the insured is as innocent as the insurer of the existence of a prior encumbrance. To this extent we apply the same logic to this contract clause as

we did to the statutory construction required of the misrepresentation clause in the application, both having to do with, at most, an unknowing misstatement or omission of fact. This policy was prepared by the insurer and is to be construed against it. To allow a provision regarding the existence of prior liens to void a policy where the fact is unknown to either party, and where it has nothing to do with either the loss or the risk, would be to turn the policy into a gambling contract. We hold that under a proper construction of the exclusion clause it must refer to such an encumbrance of the property as was, if not placed on the property by the applicant, at least known to him, or it will not void his interest in the policy.

5. The two remaining enumerations of error refer to proof of value. A layman may testify as to his opinion of the value of an item if he has had the opportunity for forming a correct opinion. Code § 38-1709; *Firemen's Ins. Co. v. Allmond,* 105 Ga. App. 763 (2c) (125 SE2d 545) (1962). Thompson testified concerning his conversations with certain individuals as to the value of the rig (which it was important for him to ascertain, as he was putting up the money for the business based on this single asset) and then stated "and also I went around to places that sell these trucks and trailers trying to determine how much money another one or maybe two more would cost me." He further testified that the value prior to the wreck was $10,000 to $12,000 for the trailer and $20,000 on the tractor. There is no error enumerated on the admission of this testimony. Accordingly, the finding of the trial court of $11,000 and $20,000 on the respective values of the trailer and tractor is supported by evidence.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED MARCH 2, 1978 — DECIDED MARCH 17, 1978 — REHEARING DENIED MARCH 31, 1978.

*Jones, Cork, Miller & Benton, E. Bruce Benton,* for appellant.

*Brown, Katz, Flatau & Hasty, S. Phillip Brown,* for appellees.