**In the Matter of William Harris STEWART, Debtor.**

**FIRST NATIONAL BANK & TRUST COMPANY IN MACON, Plaintiff,**

v.

**William Harris STEWART, Defendant.**

**Bankruptcy No. 79–00979.**
**Adversary Proceeding No. 80–0008.**

United States Bankruptcy Court,
M. D. Georgia,
Macon Division.

Sept. 22, 1980.

Arthur L. Phillips, William Harris Stewart, Macon, for plaintiff.

James B. McLaughlin, Jr., Macon, for defendant.

## MEMORANDUM DECISION ON COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF DEBT

HENRY D. EVANS, Bankruptcy Judge.

### STATEMENT OF THE CASE

On October 16, 1979 William Harris Stewart, defendant, filed his voluntary petition in bankruptcy. Following an extension of time for filing such objections, the First National Bank & Trust Company in Macon, plaintiff, filed its complaint to determine the dischargeability of certain debts owed it by the defendant. Within the time prescribed by law, the defendant filed his answer generally denying the pertinent parts of the plaintiff's complaint. The matter came on to be heard March 12, 1980, both parties present and represented by counsel.

After the presentation of evidence and consideration of the transcript, pleadings and documentary evidence, the Court makes the following:

## FINDINGS OF FACT

On June 20, 1979 William Harris Stewart applied for a loan of $5,000.00 from the First National Bank & Trust Company in Macon. Mr. Bill Gillis was the loan officer who assisted Mr. Stewart in obtaining the loan, and as part of the procedure required Mr. Stewart to complete and sign a security agreement. The agreement stated in pertinent part:

"Debtor hereby represents, warrants and agrees:

1. Debtor now has, or will by the use of money advanced hereunder immediately acquire, full title to the Collateral. If any of the Collateral is to be acquired by money advanced hereunder, such funds may be disbursed directly by Secured Party to any seller of such Collateral. Debtor will forever defend the title of Secured Party to the Collateral against the claims and demands of all persons and will keep the Collateral free of all liens and encumbrances."

The security agreement listed as collateral a 1976 Chevrolet Nova and a 1973 Ford pickup truck. The loan was made under the authorization of Mr. Gillis, who had previously dealt with Mr. Stewart on six occasions concerning loans with the plaintiff.

Subsequent to the signing of the agreement, the title to the Chevrolet was delivered to Mr. Gillis, but it revealed that title to that vehicle was in the name of Carol H. Stewart, the defendant's wife. No action was taken to transfer the title to Mr. Stewart. The title to the Ford was never delivered. Efforts were made by the debtor to obtain the title certificate on the Ford.

On September 21, 1979 Mr. Stewart possessed a Master Charge card which allowed him to draw upon the credit of the plaintiff in order to make purchases from merchants accepting the card. As of that date the balance due the bank on previously made and unpaid purchases was $71.45. On the 21st day of September 1979 the defendant made a purchase from "Factory Outlet Shoes Macon Ga" in the amount of $23.82. On the 23rd day of September 1979 the defendant purchased goods or services from "Bowden Golf Course Macon Ga" in the amount of $88.93. On the 24th day of September 1979 the defendant obtained a cash advance from the plaintiff in the amount of $1,000.00. From the 25th day of September through the 2nd day of October 1979, the defendant charged goods and services in the amount of $300.40, no single charge being over $50.00.

The defendant's credit limit was $1,000.00 at all times, and he knew of that limit. On October 16, 1979 the defendant filed his petition in this Court.

## CONCLUSIONS OF LAW

In pertinent part Section 523 of the Bankruptcy Code [11 U.S.C. § 523] states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ..."

It is a well established principle of the law concerning bankruptcy that the plaintiff seeking to come within the statutory exemptions to discharge has the burden of proving by clear and convincing evidence that the debt predicating the complaint fits within the language of the statute. *In re Noble*, 42 F.Supp. 684 (D.C.Colo.1941); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975). See 1A *Collier on Bankruptcy* ¶ 17.16, page 1648 (14th ed.). As to the portion of the complaint dealing with false representations and fraud contained in the security agreement executed by the defendant, this burden was not carried.

First of all, as to the security agreement containing the representation that the debtor had or would obtain title to the vehicles involved, the plaintiff has failed to show the fraudulent intent necessary to uphold its prima facie case.

■ It is well established that the actions forbidden by Section 523(a)(2)(A) involve moral turpitude or intentional wrong. 1A *Collier on Bankruptcy* ¶ 17.15, page 1634 (14th ed.); 3 *Collier on Bankruptcy* ¶ 523.-08[4], pages 523–39 (15th ed.). In addition, in Georgia actions concerning false representations, deceit and fraud all involve scienter and present knowledge of the falsity of the representations made. Hence, promises to act a certain way in the future have regularly been held not actionable unless made with the present intent not to perform. *Southeastern Plumbing Supply Co. v. Lee*, 133 Ga.App. 470, 211 S.E.2d 418 (1974); *Stephens v. Millikin*, 35 Ga.App. 287, 133 S.E. 67 (1926).

■ The plaintiff does not rebut the testimony of the defendant that he made an effort to get the certificate of title on one vehicle (the Ford pickup) and does not show that the defendant did not have title to that vehicle at the time of the agreement. Granted, no certificate of title was given to the plaintiff, but as to actual ownership of the car, the certificate of title is only prima facie evidence, not conclusive. *Wreyford v. Peoples Loan & Finance Corp.*, 111 Ga.App. 221, 141 S.E.2d 216 (1965); *Canal Insurance Co. v. P & J Truck Lines*, 145 Ga.App. 545, 244 S.E.2d 81 (1978). The title to the Chevrolet was delivered to the plaintiff and could have been acquired as collateral by it either by having the title owner sign the transfer statement on the bank transferring the vehicle to Mr. Stewart or by adding the name of Mrs. Stewart to the note. Intent to deceive, defraud or falsely represent the situation quite simply has not been shown.

Secondly, it is the opinion of this Court, strongly supported by the testimony of Mr. Gillis, that the plaintiff relied on past dealings with the defendant rather than the security agreement and provision of collateral in extending the credit. The statements that the loan would not have been made without the collateral ring hollow in light of the plaintiff's actions to obtain the collateral and the testimony about the past relationship between the plaintiff and defendant.

■ The question of false pretenses and representations with respect to the credit card transaction is a different matter altogether. The Court finds that as to $432.60 a type of fraud has been shown and so precludes the discharge of the bankrupt from operating as to that amount.

■ It is well established that the type of fraud dealt with in Section 523(a)(2)(A) is actual fraud and requires intentional wrong involving moral turpitude. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975); *Friendly Finance Co. v. Stover*, 109 Ga.App. 21, 134 S.E.2d 837 (1964). Therefore, if by fraudulent or false representations intentionally made with the intent to deceive, and through reliance on those representations by another, a person obtains goods or services, the requirements of the Code are met. See *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975).

In credit card transactions concerning Master Charge or Visa cards, the two representations normally made upon presentation of the card to a merchant arise from the contractual agreement made between the cardholder and the member bank. They are:

1. that the cardholder has the ability to pay for the merchandise and is using the card as a convenient method of obtaining the goods through the use of the credit of the member bank;

2. that the cardholder will indeed pay for the goods obtained, albeit indirectly via the extension of and repayment of credit from the member bank.

There is no question that in the instant case these representations were made every time the defendant used his Master Charge card to purchase goods and services.

■ The second element necessary to establish the nondischargeability of the debt in question is that these statements were intentionally made with the intent to deceive. Intention of course is a very subjective thing and in most instances can only be

shown circumstantially. Nonetheless, if the appropriate factors are shown the Court, this intention may be established. Factors for which to look are:

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges; [1]

5. the financial condition of the debtor at the time the charges are made; and

6. whether the charges were above the credit limit of the account.

See *In re Kranz*, CCH, ¶ 65,924 (E.D.Wis. 1976); *In re Alexander*, CCH, ¶ 64,385 (D.C. Okla.1972); 1A *Collier on Bankruptcy* ¶ 17.-16 (14th ed.); *Roberta Annette Reinhart*, 1 Bank.Ct. Dec. 666 (E.D.Va.1975).

In the case before the Court the factors all point to deception, and the Court is persuaded that the requisite intent to deceive has been shown. From September 21, 1979 through October 2, 1979, $1,432.60 in transactions was charged to the defendant's account. Due to a prior balance on the account, $504.05 of the purchases was over the credit limit. All but one of the transactions was under $50.00. At that time, the defendant was faced with a substantial debt in the form of a $32,000.00 judgment, as well as the normal expenses of living. The bankruptcy was filed two weeks after the last charge was made. The defendant's intent is undeniable.

There is no question that the goods were received by the defendant so to discuss that element is inefficient. The Court is left with only one element, that of reliance by the plaintiff on the false representations made. In this instance, the Court finds that due to the actions of the defendant and the peculiarities of the Master Charge credit system, this element need not be established in any way other than the showing that the goods were obtained.

The reasoning behind this viewpoint is equitable in nature in that no person should be allowed to circumvent the normal consequences of the law simply by dealing with one person through an intermediary. The peculiarities of the Master Charge system which make it necessary to reason in this way are:

1. the way charges under $50.00 are treated by the system; and

2. the contractual relationship between the merchant and the Master Charge system.

Working together these peculiarities allow a dishonest person to make substantial purchases in a short period of time without any information transferring to the Master Charge system.

First of all, it must be understood that when a cardholder presents his card to a merchant for the purchase of an item under $50.00 the merchant has a contractual right to rely on the card and will be paid by the member bank pursuant to the contract whether or not the purchaser pays, doesn't pay or (in some instances) is authorized to use the card. There are protections, but they cannot come into play until sufficient information has been received by the member bank to trigger the protective mechanisms.

Secondly, it must be understood that the day the purchase is made is not the day the system receives information on it. Some creditors hold the invoices for several days before presenting them for payment. Therefore, several days may elapse between the time substantial purchases are made and the member bank receives notice that the credit limit of the account has been exceeded. During the "gap" if purchases are held to under $50.00, substantial amounts can accrue without the knowledge of the member bank, without any chance on its part to protect itself and without any specific reliance on the part of the member

---

1. Charges under $50.00 do not require a credit check by the participating merchant and so do not come to the attention of the member bank until after a billing period.

bank as to individual purchases. The member bank essentially relies on the representations contained in the agreement which attaches to the card when it is delivered for purchases made with the card.

In this instance, the plaintiff cannot complain about the $1,000.00 cash advance obtained by the defendant because it was allowed with full knowledge that it was in excess of the credit limit, and did not subvert any of the protective mechanisms afforded the bank by the system. The rest of the purchases were made without the knowledge of the plaintiff in such a way as to deny it the privilege of protecting itself, and so will afford it the opportunity to rely on the overriding representations of ability of pay and intent to pay that attach to the card itself. In essence the cardholder is being made to live up to a responsibility that he assumes when he uses a credit card as a convenience allowing him to forego the carrying of cash and to defer the payment of major acquisitions. The abuse of that responsibility should produce penalty.