**In the Matter of William Edward PITTS, Debtor.**

**BARNETT BANK OF TAMPA, Plaintiff,**

**v.**

**William Edward PITTS, Defendant.**

**Bankruptcy No. 80–1412.**

United States Bankruptcy Court, M. D. Florida, Tampa Division.

March 20, 1981.

Robert H. Buesing, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill P. A., Tampa, Fla., for plaintiff.

William Edward Pitts, J. T. Schrotel, Tampa, Fla., for defendant.

ALEXANDER L. PASKAY, Chief Judge.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM OF OPINION

THIS IS a contested discharge proceeding and the matter under consideration is the dischargeability of a debt admittedly due and owing by William Edward Pitts (Pitts) to Barnett Bank of Tampa (Barnett), the Plaintiff who instituted this adversary proceeding.

The claim of non-dischargeability is based on § 523(a)(2)(A) of the Bankruptcy Code and it is contended by the Plaintiff that the debt represents a liability created by false pretenses, and as such is outside of the overall protective provisions of the general bankruptcy discharge. This claim is based on the alleged misuse of a Visa card. The facts controlling this controversy as established at the Final Evidentiary Hearing can be summarized as follows:

Pitts is a graduate of Georgia Tech and obtained a degree in industrial management. He worked as a purchasing agent basically for higher educational institutions during the past 16 years. At the time pertinent to this controversy he was employed as director of purchasing of Hillsborough Community College (HCC) at the annual salary of $22,000. He was paid twice a month. On August 8, 1980, Pitts was informed by the president of HCC that his contract would not be renewed. While Pitts claimed that he expected to obtain a new employment and he was confident that he will not have any difficulty to obtain an even better position, there is no evidence in this record which would justify this optimistic outlook and there is no doubt that he had no realistic basis to anticipate that he will be able to obtain new employment in the foreseeable future. This is especially true in light of the fact and it is admitted that opportunities in his particular field are very limited and it is difficult to obtain employment in his field. It is further without dispute that Pitts had no other income during the period in question.

In 1975, Pitts submitted an application for a Visa card to Barnett. In due course Barnett issued a Visa card to Pitts with an initial credit limit of $400 (Pl's Exh. # 1). On March 23, 1979, Barnett as part of a promotional program informed Pitts that his credit was raised to $1,800 even though Pitts did not ask for an increase (Pl's Exh. # 2). Some time in August or September of 1980, Pitts' credit limit was again increased to $3,600 (Pl's Exh. # 3).

According to the statements on the Visa account of Pitts, issued by Barnett (Pl's Exh. # 3), the total charges made by Pitts as of September 10, 1979 were $237.16. These charges represent restaurant and gasoline charges. In the following month, the statement indicates total charges of $216.64, again representing restaurant and

gasoline charges. The same statement reveals that there were no charges made by Pitts on his Visa card during November of 1979, December, 1979, or January, 1980. The statement reveals total charges for the billing period ending February 10, of $11.98; for March, $120.18; for April, $211.92; and for May, $58.16. Just like earlier, all these charges were basically restaurant and gasoline charges. The statement fails to disclose any charges for June, July, or August.

After Pitts was notified that his contract would not be renewed, not only did the amount of charges made by him on his Visa card increase to a significant degree, but the statement also reveals a definite change in the pattern of purchases and charges. The September statement which covers the charges for the month of August, the month he was notified that he lost his employment, reveals total charges, consisting of purchases and cash advances, of $994.86. The October statement covering the charges made in the month of September, the month Pitts filed his petition for relief, indicates total charges of $1,235.21 which includes a $1,000 cash advance, thus raising his outstanding balance on his Visa card during August and September, from $1,679.29 to $3,808.14. All these charges were made, as noted, after he was informed that his contract would not be renewed and when he was aware that he would not have any income after the last paycheck which he was to receive in mid September.

The claim of non-dischargeability is based on § 523(a)(2)(A) of the Code which provides in pertinent part as follows:

§ 523—Exceptions to Discharge (a) "A discharge . . . . does not discharge an individual debtor from any debt . . . (2) for obtaining money, property, services or an extension renewal or refinance of credit, by (A) false pretenses, a false representation or fraud . . . . . . ."

■ In order to sustain a claim of non-dischargeability under § 523(a)(2)(A), the plaintiff must establish (1) that the Defendant made a materially false representation; (2) that the representation was made with intent to defraud; (3) that the Plaintiff relied on the false representation.

■ Purchase of merchandise by use of a credit card is an implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. Accordingly, when one purchases goods on credit or makes other charges and either knows that he is unable to comply with the payment requirements of the contract or when it appears from the evidence that he had no intention to pay for them, he obtains the property through false pretenses which, in turn, constitutes a form of fraud. The liability created by such credit purchases may be rendered non-dischargeable. *In re Boydston*, 520 F.2d 1098 (5th Cir. 1975); *In re Black*, 373 F.Supp. 105 (E.D.Wis.1974).

■ Applying these foregoing principles to the facts as appear from this record, it can not be gainsaid that Pitts was fully cognizant and aware that he lost his position with the college; that his sole source of income was lost at the time he embarked in this unprecedented and unusual spending spree. While Pitts stated that he was confident that he would be able to get employment, this confidence had no realistic support and he knew or should have known that he would not be able to meet these charges. His explanation that he started to make these substantial charges only because his credit line was increased is unacceptable and furnishes no valid excuse. While the increase in his credit limit by the plaintiff might have encouraged him to depart from his previous charging pattern, he knew, or as a well educated man should have known, that this was not a license to make irresponsible charges, well knowing that he would not be able to meet these obligations. The fact that the Debtor makes substantial charges even though they are within the credit limit is not an acceptable excuse when the Debtor knows that because of his changed circumstances he is no longer able to meet his obligations when they become due.

Having concluded that Pitts made these charges on his Visa card after he lost his position and less than four weeks before his bankruptcy with the full knowledge that he will not be able to pay for these charges, this Court is satisfied that he did obtain properties and monies through false pretenses and, therefore, the balance due and owing to Barnett should be excluded from the overall protection of the general bankruptcy discharge by virtue of § 523(a)(2)(A).

A separate final judgment will be entered in accordance with the foregoing.