In re Concetta M. PETRINI, Debtor.

### PHILADELPHIA NATIONAL BANK, Plaintiff,

v.

### Concetta M. PETRINI, Defendant.

Bankruptcy No. 82–00282G.
Adv. No. 82–1400G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 29, 1982.

Milton Becket, Philadelphia, Pa., for plaintiff, Philadelphia Nat. Bank.

Samuel A. Rossitto, Jr., Springfield, Pa., for debtor/defendant, Concetta M. Petrini.

Leonard P. Goldberger, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether a debt of $761.95 allegedly incurred by the debtor

through the use of her credit card within the three months preceding the filing of her petition for relief under chapter 7 of the Bankruptcy Code ("the Code") is nondischargeable pursuant to section 523(a)(2)(A) of the Code. We conclude, under the circumstances of this case, that the aforesaid debt is nondischargeable.

■ The facts of the instant case are as follows:[1] Concetta Petrini ("the debtor") had a charge account with the Philadelphia National Bank ("the creditor"). On September 21, 1981, the debtor received a notice that her charge account had reached its credit limit. Subsequent thereto, approximately thirty-seven (37) purchases were made during the months of November and December. The debtor, however, testified that she did not personally use her credit card after the beginning of November (N.T. 7/19/82 at 8, 9). The debtor further testified that she ignored the account statements sent to her by the creditor and threw them away. (N.T. 7/19/82 at 10). On January 22, 1982, the debtor filed a petition for relief under chapter 7 of the Code. On June 7, 1982, the creditor filed the instant complaint to determine the nondischargeability of the $761.92 owed to it.

Section 523(a)(2)(A) of the Code provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

The courts have interpreted that section to require the plaintiff/creditor to prove that: (1) the debtor made a materially false representation; (2) with the intent to deceive;

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

and (3) the creditor relied on that false representation. *See, e.g., In re Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981); *In re Poteet,* 12 B.R. 565 (Bkrtcy.N.D.Tex.1981); *In re Pitts,* 10 B.R. 557 (Bkrtcy.M.D.Fla.1981). Furthermore, the frauds involved in section 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong and it must affirmatively appear that such representations were knowingly and fraudulently made. *Matter of Slutzky,* 22 B.R. 270 (Bkrtcy.E.D.Mich.S.D.1982); 3 *Collier on Bankruptcy,* ¶ 523.08(4) at 523–39 (15th ed. 1982).

■ We have adopted the following guidelines, laid down in *In re Stewart,* 7 B.R. 551 (Bkrtcy.M.D.Ga.1980), when determining whether the requisite intention to deceive exists within the meaning of section 523(a)(2)(A):

> Intention [to deceive] of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if the appropriate factors are shown the Court, this intention may be established. Factors for which to look are:
>
> 1. the length of time between the charges made and the filing of bankruptcy;
>
> 2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
>
> 3. the number of charges made;
>
> 4. the amount of the charges;
>
> 5. the financial condition of the debtor at the time the charges are made; and
>
> 6. whether the charges were above the credit limit of the account.

7 B.R. at 554–55 (footnote omitted). We conclude that the application of the above guidelines to the case at bench affirmatively establishes that the debtor intended to deceive the creditor.

**2.** In addition, the bankruptcy specialist for the Philadelphia National Bank testified that the bank has no record of the debtor ever having

■ We reject as incredulous the debtor's contention that she made no personal use of her credit card after November 4, 1981. She testified that she had placed her card in a small metal box in her apartment from which it may have been taken and used, without the debtor's authorization, by someone who resided with her for a while. This nameless person then allegedly made 37 unauthorized purchases during the months of November and December. What makes this more unbelievable is the fact that the debtor received statements from the bank indicating that approximately $700.00 in charges had been incurred on her account in those months and the debtor merely chose to "dismiss" them and "just [throw] them away" (N.T. 7/19/82 at 10).[2] In addition, the fact that the debtor was notified in September of 1981 that she had reached her credit limit but yet chose to disregard the monthly bank statements indicating the "unauthorized" purchases casts further doubt on the debtor's credibility. Consequently, given the dubious quality of the debtor's testimony, we conclude that the purchases at issue, if not expressly authorized by the debtor, were at least tacitly condoned.

As to the financial condition of the debtor at the time the charges in question were made, the debtor testified that she had lost a second job in June of 1981 which diminished her income by $200.00 a month (N.T. 7/19/82 at 40). Furthermore, in determining whether or not an attorney had been consulted concerning the filing of a petition for relief before the charges in question were made, we take note of the debtor's testimony that she did not, after November of 1981, open any of the billings from the creditor herein or any other creditors "after having discussed this with my attorney. I just automatically threw them in the trash can" (N.T. 7/19/82 at 39).

Therefore, when we consider the debtor's actions in light of her prior use of the credit card (the debtor averaged approximately

contacted it that there were unauthorized purchases on her account (N.T. 7/19/82 at 14).

two (2) charges per month prior to September of 1981, N.T. 7/19/82 at 12), and when we further consider the debtor's conduct in not reading her bank statements and her reasons for not doing so, we must conclude, using the six aforementioned factors as a guide, that the present record indicates that the debtor made the purchases in question without intending to pay for them and in contemplation of filing a petition for relief under the Code. Consequently, we conclude that the debt of $761.95 owed to the creditor by the debtor is nondischargeable pursuant to section 523(a)(2)(A) of the Code.