In re Lawrence E. BRACKIN, Kathleen C. Brackin, Debtors.

**PHILADELPHIA NATIONAL BANK, Plaintiff,**

v.

**Lawrence E. BRACKIN and Kathleen C. Brackin, Defendant.**

Bankruptcy No. 82–00317G.

Adv. No. 82–1399G.

United States Bankruptcy Court,
E. D. Pennsylvania.

Oct. 29, 1982.

Milton Becket, Philadelphia, Pa., for plaintiff, Philadelphia Nat. Bank.

Nancy J. Winther, Wille, McOscar & Winther, West Chester, Pa., for debtors/defendants, Lawrence E. Brackin and Kathleen C. Brackin.

Leo F. Doyle, Philadelphia, Pa., trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a debt of $727.43 incurred by the debtors through the use of their credit cards within the two months preceding the filing of their petition for relief under chapter 7 of the Bankruptcy Code ("the Code") is nondischargeable

pursuant to section 523(a)(2)(A) of the Code. We conclude, under the circumstances of this case, that the aforesaid debt is dischargeable.

The facts of the instant case are as follows:[1] Lawrence and Kathleen Brackin ("the debtors") were issued a credit card by the Philadelphia National Bank ("the creditor"). Between June and November of 1981, the debtors made approximately eleven (11) purchases on their charge account and the account was paid up to date as of the end of October of 1981. From the end of November of 1981 until the beginning of January of 1982, the debtors made nine (9) purchases on their account totalling $761.43. On December 29, 1981 the debtors paid $34.00 on their account. On January 15, 1982, the debtors were evicted by their landlord because they owed $18,000.00 in back rent. Subsequent to the eviction by their landlord, the debtors, on January 26, 1982, filed a petition for relief under Chapter 7 of the Code. On June 7, 1982, the creditor subsequently filed the instant complaint to determine the nondischargeability of the $727.43 owed to it.

Section 523(a)(2)(A) of the Code provides: (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A)

The courts have interpreted that section to require the creditor to prove that: (1) the debtor made a materially false representation; (2) with the intent to deceive; and (3) the creditor relied on that false representation. *See, e.g., In re Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981); *In re Poteet,* 12 B.R. 565 (Bkrtcy.N.D.Tex.1981); *In re Pitts,*

10 B.R. 557 (Bkrtcy.M.D.Fla.1981). Furthermore, the frauds involved in section 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong and it must affirmatively appear that such representations were knowingly and fraudulently made. *Matter of Slutzky,* 22 B.R. 270 (Bkrtcy.E.D.Mich.S.D.1982); 3 *Collier on Bankruptcy,* ¶ 523.08(4) at 523–39 (15th ed. 1982).

One court has proposed the following guidelines when determining whether the requisite intention to deceive exists within the meaning of section 523(a)(2)(A):

Intention [to deceive] of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if the appropriate factors are shown the Court, this intention may be established. Factors for which to look are:

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges are made; and

6. whether the charges were above the credit limit of the account.

*In re Stewart,* 7 B.R. 551, 554–55 (Bkrtcy.M. D.Ga.1980) (footnote omitted).

In the case at bar, we conclude that an analysis of all of the aforesaid factors indicate that the debtors did not use their credit cards with the intention of deceiving the creditor.

As to the financial condition of the debtors at the time the purchases in question

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

were made, the wife-debtor testified that she and her husband were in financial difficulty but that it was possible, given the nature of the mushroom industry, to pull out. of a financial slump within a fairly short period of time. (N.T. 7/19/82 at 8, 16, 32). Furthermore, there is no evidence that the debtors had consulted an attorney regarding the filing of a petition seeking relief before the charges in question were made. To the contrary, the wife-debtor testified that she and her husband had not considered filing a petition until after their landlord evicted them for the nonpayment of back rent on January 15, 1982 (N.T. 7/19/82 at 9, 31). No charges were made by the debtor after January 15, 1982.

The creditor's reliance in the instant case on our decision in *In re Ciavarelli*, 16 B.R. 369 (Bkrtcy.E.D.Pa.1982) is misplaced. *Ciavarelli* is distinguishable from the facts in the present case in that the purchases in the *Ciavarelli* case were made within two weeks of the date when the debtor's husband's salary was drastically cut and within three weeks of the date the debtor filed a petition for relief.[2] Furthermore, the items purchased by the debtor in *Ciavarelli* were, for the most part, luxuries such as candy and camera equipment.

Our conclusion that the debtors did not intend to deceive the creditor is further supported by a consideration of the number of purchases, the amount of those purchases and the types of purchases made by the debtors. We fail to see, keeping in mind the heavy burden the creditor carries when seeking a determination of nondischargeability on the ground that money or credit was obtained by false representation or actual fraud, how the purchase of approximately nine (9) items during the Christmas season lends itself to the inescapable conclusion that the debtors made these purchases without intending to pay for them and in contemplation of filing a petition for relief under the Code. Furthermore, quite unlike the situation in *Ciavarelli, supra*, the articles purchased in the case *sub judice* were, for the most part, necessities.[3] Finally, the fact that the debtors' December 31, 1981 statement, which was the last finance statement received by the debtors prior to the filing of their petition, reflected that the debtors had $256.00 still available to them on their account and the fact that the debtors exceeded that credit limit by $465.41 does not give rise to a finding of intent to deceive on the debtors' part within the meaning of section 523(a)(2)(A). We cannot, from the evidence present before us, conclude that the debtors knew, at the time they made the purchases in question, that they would be unable to pay for them and, in fact, intended not to pay for them but intended to file a petition for relief instead. Consequently, we conclude that the debt of

---

2. See, e.g., *In re Vegh*, 14 B.R. 345 (Bkrtcy.S.D. Fla.1981) (held nondischargeable a credit card debt of $34,573.18 incurred by unemployed debtor within 1 month of filing for relief); *In re Schnore*, 13 B.R. 249 (Bkrtcy.W.D.Wis.1981) (held nondischargeable credit card debt of $3,467.54 incurred in a two month shopping spree by debtor); *In re Poteet*, 12 B.R. 565 (Bkrtcy.N.D.Tex.1981) (held nondischargeable credit card debt of $6,653.65 incurred by debtors within 1½ months of filing for relief); *In re Pitts*, 10 B.R. 557 (Bkrtcy.M.D.Fla.1981) (held nondischargeable credit card debt of $3,808.14 incurred after debtor lost his job and within 2 months of filing for relief); *In re Wright*, 8 B.R. 625 (Bkrtcy.S.D.Ohio 1981) (held nondischargeable credit card debt of $1,509.17 incurred within two weeks of date debtor's husband lost his job and within 3 months of filing for relief); *In re Schartner*, 7 B.R. 885 (Bkrtcy.N.D.Ohio 1980) (held nondischargeable credit card debt

of $2,720.39 incurred by debtor in a 4 week period).

3. The purchases in question are as follows:

| Date | | Amount | Item |
|---|---|---|---|
| 11/27/81 | – | $ 27.00 | (shoes) |
| 12/20/81 | – | $ 32.99 | (blue jeans) |
| 12/22/81 | – | $ 42.94 | (mens wear) |
| 12/28/81 | – | $140.65 | (mens wear) |
| 12/30/81 | – | $ 57.40 | (shoes) |
| 12/31/81 | – | $ 44.95 | (winter jacket) |
| 12/31/81 | – | $ 13.00 | ( ? ) |
| 1/4/82 | – | $159.60 | (boots and winter vest) |
| 1/5/82 | – | $270.00 | (airplane ticket) |

See *In re Brashears*, 12 B.R. 136 (Bkrtcy.S.D. Miss.1981) (bankruptcy court held that purchase of $115.77 worth of necessities in the month prior to filing for relief did not give rise to a finding of intent to deceive on the debtor's part).

$727.43 owed to the creditor is dischargeable.