**In re Darrell W. LIPSEY, Debtor.**

**AMERICAN BANK AND TRUST CO. OF PA., Plaintiff,**

v.

**Darrell W. LIPSEY, Defendant.**

**Bankruptcy No. 83–04647G.**

**Adv. No. 84–0147G.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 26, 1984.

Clemson N. Page, Jr., Bingaman, Hess, Coblentz & Bell, Reading, Pa., for plaintiff, American Bank and Trust Co. of Pa.

Steven G. Dubin, Adrienne I. Greenfield, Jerold S. Berschler, Solomon & Berschler, P.C., Norristown, Pa., for debtor/defendant, Darrell W. Lipsey.

Jonathan H. Ganz, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge.

The issue at bench is whether a debt incurred by a debtor through the use of his credit cards within seven months preceding the filing of his petition for relief under chapter 7 of the Bankruptcy Code ("the Code") is nondischargeable pursuant to § 523(a)(2)(A) of the Code. We conclude that, under the circumstances of this case, the debt is nondischargeable.

The facts of the case are as follows:[1] Darrell W. Lipsey ("the debtor") was issued a Master Card charge plate ("Master Card") and a Visa charge plate ("Visa Card") by American Bank and Trust Company of Pennsylvania ("the creditor") in March of 1983. From April through September, the debtor made purchases of goods and services using those credit cards, for total charges of $3,070.25.[2] During that five month period he made payments on the two accounts totalling $55.00. And this amount reflects two $15.00 payments in April for annual account fees, and one $25.00 payment in June for unspecified goods and services.

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** The figure includes $231.64 in finance charges through January, 1984.

Although the debtor changed his address sometime after April 6, there is nothing in the record to indicate that he did not receive account statements directed to his former address before the creditor learned of his new address in September.

The debtor's Master Card charge account became past due and exceeded the available credit limit of $1,000.00 in August. His Visa account became delinquent in August and went overlimit in September. During this period, the debtor made a number of purchases at amounts below $50.00. The creditor wrote and telephoned the debtor in August and September, informing him that the accounts were past due and over limit and that he must return the credit cards if he did not reduce the balances below the credit limits. The creditor received the credit cards in the mail on September 14.

The creditor filed suit against the debtor in state court to collect the debt, and the complaint was served on the debtor on November 29. Two days later, the debtor filed a petition for relief under chapter 7 of the Code. In February, the creditor filed the instant complaint to determine the nondischargeability of the debt. During the course of the evidentiary hearing, the debtor's apparent suggestibility on the stand, coupled with the contradictory testimony of the creditor's account supervisor, cast doubt on the debtor's credibility with respect to his ability or his intention to pay when he made the purchases.

The creditor avers that the instant debt is nondischargeable pursuant to § 523(a)(2)(A) of the Code because the debtor used the credit cards to make purchases at a time when he was unable, and therefore did not intend, to pay for them.

Section 523 of the Code provides in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance (sic) of credit, by—

(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523.

In order to prevail under § 523(a)(2)(A), the plaintiff/creditor must prove that: (1) the debtor made a materially false representation; (2) with the intent to deceive; and (3) that the creditor relied on that false representation. *See, e.g., H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249 (Bankr.W.D.Wis. 1981); *Ranier Bank v. Poteet (In re Poteet)*, 12 B.R. 565 (Bankr.N.D.Tex.1981); *Barnett Bank v. Pitts (In re Pitts)*, 10 B.R. 557 (Bankr.M.D.Fla.1981).

A credit card holder's use of his credit card is regarded as an implied representation to the credit card issuer that the holder has both the ability and the intention to pay for his purchases, upon which the issuer relies in extending credit. *See, e.g., Southeast Services, Inc. v. Vegh (In re Vegh)*, 14 B.R. 345 (Bankr.S.D.Fla.1981); *Schnore*, 13 B.R. 249; *Poteet*, 12 B.R. 565; *Pitts*, 10 B.R. 557; *Huntington National Bank v. Schartner (In re Shartner)*, 7 B.R. 885 (Bankr.N.D.Ohio 1980); *First National Bank & Trust Co. v. Stewart (In re Stewart)*, 7 B.R. 551 (Bankr.M.D.Ga.1980). "Thus, a purchase of goods on credit by a debtor who does not intend to pay therefor, constitutes false representation...." 3 *Collier on Bankruptcy* ¶ 523.08 (15th ed. 1982).

The frauds included under § 523(a)(2)(A) require moral turpitude or intentional wrong, and it must affirmatively appear that the representations were knowingly and fraudulently made. *Luft v. Slutzky (In re Slutzky)*, 22 B.R. 270 (Bankr.E.D.Mich.1982).

"Intention [to deceive] of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if the appropriate factors are shown

the Court, this intention may be established." *Stewart*, 7 B.R. 551. We have adopted the following guidelines which we use, in conjunction with other criteria, in evaluating whether the requisite intention to deceive exists within the meaning of § 523(a)(2)(A):

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges are made; and

6. whether the charges were above the credit limit of the account.

*Philadelphia National Bank v. Brackin (In re Brackin)*, 23 B.R. 984 (Bankr.E.D. Pa.1982); *Philadelphia National Bank v. Petrini (In re Petrini)*, 23 B.R. 981 (Bankr. E.D.Pa.1982); *Strawbridge & Clothier v. Ciavarelli (In re Ciavarelli)*, 16 B.R. 369 (Bankr.E.D.Pa.1982); *Stewart*, 7 B.R. 551.

Whenever a credit card holder uses his credit card, he is representing that he has both the ability and the intention to pay for those purchases and the credit card issuer relies on those implied representations in extending credit to the card holder—thus, the creditor must usually only establish that the debtor used his credit card to deceive the creditor into believing that the debtor could and would repay the debt when, in fact, the debtor did not intend to do so.

*Ciavarelli*, 16 B.R. 370.

■ An examination of the timing, number, amount and type of the purchases, as well as of the debtor's payment record and ability to pay at the time when the purchases were made, lead us to the conclusion that the debtor intended to deceive when he used the credit cards.

■ The fifty-nine charges in question were made during a five month period from April through September.[3] The debtor attempts to distinguish this case from others in which we have found debts nondischargeable, on the basis that the debtor did not embark on a shopping spree immediately before the filing of the petition. *Petrini*, 23 B.R. 981; *Ciavarelli*, 16 B.R. 369. We do not find this argument compelling. Although the final purchase was made nearly three months before the filing of the petition, the charges up to that time were significant both in number and amount, and came to an abrupt halt only when the debtor's credit privileges were revoked.

■ Although there is no evidence that the debtor had consulted an attorney regarding the filing of a petition before the purchases were made,[4] this fact alone does not establish the debtor's lack of intent to deceive.

■ Whether a purchase may be classified as a necessity or a luxury item is a relevant consideration in any analysis concerning debtor intent. *Ciavarelli*, 16 B.R. 369. The fact that the items purchased in the case presently at bench were, for the most part, luxury items,[5] supports our conclusion that the debtor did not intend to pay for them.

An August 6 Visa statement included the information that a portion of the account was past due. The following week, the debtor used his Visa Card to make four separate purchases at amounts below $50.00 ($41.00, $39.00, $41.00, $38.00) at the same retail establishment. In addition to

---

**3.** Sixty-one charges were made in all, with two items being returned and credited. Of the fifty-nine purchases: one for $35.00 was made in April; two, totalling $227.95, were made in May; twelve, totalling $786.16, were made in June; twenty-two, totalling $1,054.86, were made in July; fourteen, totalling $537.86, were made in August; and eight, totalling $221.58, were made in September.

**4.** To the contrary, the debtor testified that he first consulted an attorney in early November.

**5.** The charges included those for: airline, hotel, restaurant and bar services; a sports publication subscription; clothing; and sporting goods.

an August 6 Master Card statement which included the information that the account was overlimit, the creditor mailed an August 16 delinquency notice and a September 2 overlimit letter to the debtor. On September 7, the debtor used his Master Card to make two separate purchases at amounts below $50.00 ($29.00, $31.19) at another retail establishment.

■ An inference of fraudulent intent may be drawn from multiple purchases under the credit line. *In Re Nolan,* 1 B.R. 644 (Bankr.M.D.Fla.1979); *Lincoln First Bank, N.A. v. D'Amico (In Re D'Amico),* 1 B.R. 170 (Bankr.W.D.N.Y.1979); *Stewart,* 7 B.R. 551; *Vegh,* 14 B.R. 345. We believe that the inference is warranted in the instant case.

At the time that the debtor returned the Master Card and the Visa Card, the available credit limits had been exceeded by approximately $600.00 and $300.00, respectively. Moreover, of the Master Card amount, $291.71 is attributable to seven purchases that the debtor made after being notified that the account was over limit. Exceeding credit card limits is an appropriate factor to consider in establishing proof of intent to deceive within the meaning of § 523(a)(2)(A). *First National Bank v. Wright (In Re Wright),* 8 B.R. 625 (Bankr. S.D.Ohio 1981); *Poteet,* 12 B.R. 565.

As we indicated above, of the debtor's total payment of $55.00 on the accounts, only $25.00 was for purchases, with the balance paid for the use of the cards. This fact does not support the contention that the debtor intended to pay for the purchases.

We find, following an overall analysis of the facts of the situation presently at bench, that the debtor's conduct constituted fraud. While we are mindful that any exception to the debtor's statutory right to discharge must be construed liberally in his favor, and strictly as against the creditor, *In Re Decker,* 595 F.2d 185 (3d Cir.1979), we conclude that the record of the instant case establishes that this debt should not be discharged.