**In re Richard R. SUTLIFF and Elizabeth A. Sutliff, Debtors.**

**WILLIAMSPORT NATIONAL BANK, Plaintiff,**

v.

**Richard R. SUTLIFF and Elizabeth A. Sutliff, Defendants.**

**Bankruptcy No. 5–89–00002.
Adv. No. 5–89–0038.**

United States Bankruptcy Court, M.D. Pennsylvania.

March 27, 1990.

es Beverroxi

Brett O. Feese, Williamsport, Pa., for plaintiff.

Joseph R. DeCristopher, Sunbury, Pa., for defendants.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The plaintiff, Williamsport National Bank (hereinafter "plaintiff") commenced this proceeding seeking an exception to the male debtor's discharge pursuant to 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code. We find that under the circumstances of this case, the debt is nondischargeable.

Before proceeding further we note that the complaint filed against Elizabeth Sutliff was voluntarily withdrawn by the plaintiff. Consequently, this decision and order applies only to Richard Sutliff (hereinafter "debtor").

The facts are as follows. In December of 1987, the debtors suffered a fire at their apartment resulting in a complete loss of all their possessions valued by the debtors at approximately $26,000. Thereafter, debtors applied for and received a Disaster Relief Loan from the Small Business Administration in the approximate amount of $15,500. Debtors received these funds in three (3) installments beginning in April of 1988. The disaster funds were expended by the debtors by the middle of June of 1988.

From June of 1987 through June of 1988, the male debtor worked as a stock manager for Mid–States Beverage earning approximately $7.50 an hour. His gross income for 1988 was $15,000. The record reflects that for a period of approximately one year prior to June 9, 1988 he kept the balance on the credit card at its credit limit. In June of 1988 he paid almost the entire credit balance but could not remember the source of the funds for that payment.

Beginning on or about June 15, 1988, and continuing through August 15, 1988, debtor made approximately 134 credit card purchases with all but 13 of those purchases being under $50. The debtor made numerous charges in the same store on the same day for under $50. The July billing statement contained a direction to the debtor that he was not to issue any more charges because his present balance was over the approved credit limit and that continued use over the credit limit would result in cancellation of his account. Nonetheless, the debtor proceeded to charge approximately $3,300 more in cash advances and credit purchases through the next billing period. By August of 1988 the debtor's balance on his VISA credit card approximated $6,425 in cash advances and charges, well over his established credit limit of $1,000. During this two month period the debtor was unemployed. The record also indicates that while the debtor did not see a lawyer concerning the prospects of filing bankruptcy, he did become aware of bankruptcy in August of 1988 through a manual on "do-it-yourself" bankruptcies in a local library. On January 3, 1989, the debtors filed their Chapter 7 bankruptcy. The plaintiff timely filed the instant complaint to determine the dischargeability of the entire debt owed on the credit card.

The plaintiff argues that the circumstances surrounding the "spending spree with his VISA card" (Brief at p. 4) reflect that the debtor committed a fraud on the Bank and that, therefore, the entire credit card debt should be rendered nondischargeable pursuant to the dictates of § 523(a)(2)(A). The debtor responds that the purchases made were necessary to replace the items lost during the December

of 1987 fire and that while the male debtor knew that he was over this credit limit he did not know to what extent. Further, the debtor believed that as long as he could make a full payment on the amount of credit charges over the credit limit he could charge over the credit limit under the terms of his credit agreement with the plaintiff. We find the debtor's testimony unworthy of belief and that the plaintiff has met its burden of proof of showing that the debt is nondischargeable under § 523(a)(2)(A).

Section 523(a)(2)(A) provides as follows:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

■ We find much guidance in the case of *In re Lipsey*, 41 B.R. 255 (Bankr.E.D.Pa. 1984) which when addressed with the same issue wrote the following:

"In order to prevail under § 523(a)(2)(A), the plaintiff/creditor must prove that: (1) the debtor made a materially false representation; (2) with the intent to deceive; and (3) that the creditor relied on that false representation. *See, e.g., H.C. Prange Co. v. Schnore (In re Schnore),* 13 B.R. 249 (Bankr.W.D. Wis.1981); *Ranier Bank v. Poteet (In re Poteet),* 12 B.R. 565 (Bankr.N.D.Tex. 1981); *Barnett Bank v. Pitts (In re Pitts),* 10 B.R. 557 (Bankr.M.D.Fla.1981).

A credit card holder's use of his credit card is regarded a an implied representation to the credit card issuer that the holder has both the ability and intention to pay for his purchases, upon which the issuer relies in extending credit. *See, e.g., Southeast Services, Inc. v. Vegh (In re Vegh),* 14 B.R. 345 (Bankr.S.D.Fla. 1981); *Schnore,* 13 B.R. 249; *Poteet,* 12 B.R. 565; *Pitts,* 10 B.R. 557; *Hunting-*

*ton National Bank v. Schartner (In re Schartner),* 7 B.R. 885 (Bankr.N.D.Ohio 1980) *First National Bank & Trust Co. v. Stewart (In re Stewart),* 7 B.R. 551 (Bankr.M.D.Ga.1980). 'Thus, a purchase of goods on credit by a debtor who does not intend to pay therefor, constitutes a false representation....' 3 *Collier on Bankruptcy* ¶ 523.08 (15th ed. 1982).

The frauds included under § 523(a)(2)(A) require moral turpitude or intentional wrong, and it must affirmatively appear that the representations were knowingly and fraudulently made. *Luft v. Slutzky (In re Slutzky),* 22 B.R. 270 (Bankr.E.D.Mich.1982).

'Intention [to deceive] of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if the appropriate factors are shown the Court, this intention may be established.' *Stewart,* 7 B.R. 551. We have adopted the following guidelines which we use, in conjunction with other criteria, in evaluating whether the requisite intention to deceive exists within the meaning of § 523(a)(2)(A):

1. the length of time between the charges made and the filing of the bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. The amount of the charges;

5. the financial condition of the debtor at the time the charges were made; and

6. whether the charges were above the credit limit of the account.

*Philadelphia National Bank v. Brackin (In re Brackin),* 23 B.R. 984 (Bankr.E.D. Pa.1982); *Philadelphia National Bank v. Petrini (In re Petrini),* 23 B.R. 981 (Bankr.E.D.Pa.1982); *Strawbridge & Clothier v. Ciavarelli (In re Ciavarelli),* 16 B.R. 369 (Bankr.E.D.Pa.1982); *Stewart,* 7 B.R. 552."

Subsequent to the *In re Lipsey* case, other courts adopted the following additional factors important in determining the debtor's intent:

7. Did the debtor make multiple charges on the same day;

8. Whether or not the debtor was employed;

9. The debtor's prospects for unemployment;

10. Financial sophistication of the debtor;

11. Whether there was a sudden change in the debtor's buying habits; and

12. Whether the purchases were made for luxuries or necessities.

See *Matter of Carpenter*, 53 B.R. 724 (Bankr.N.D.Ga.1985); *In re Faulk*, 69 B.R. 743 (Bankr.N.D.Ind.1986); *In re Dougherty*, 84 B.R. 653 (9th Cir. B.A.P.1988).

This Court is always wary of overemphasizing reliance on any list of indicia or factors. This list is not exhaustive and no single factor that will automatically establish intention to deceive. These factors serve as guidance only when the Court reviews the totality of circumstances generally.

During the two month period the debtor made approximately 134 separate credit charges and approximately 69 of those charges were made while the debtor was delinquent in his minimum monthly payment due to the plaintiff. The debtor was also unemployed during this time. After he surrendered his credit card he obtained part time employment at Lycoming College for $3.85 per hour. Approximately 69 of those purchases were also made after the debtor was notified by the Bank that he exceeded his credit limit and was not to make any further charges. The debtor further impressed the court as being an articulate witness pursuing a college degree in English. But, his testimony that he did not realize that he had charged over his credit limit by more than $5,000 and that he could charge over the credit limit if he paid off the entire amount above the established credit limit is not credible.

Further, other indicia of the debtor's intent to deceive are found in the number and dollar amount of the purchases, coupled with the fact that the debtor made multiple charges on the same day on numerous occasions. The debtor was unemployed during the period when most of the cash advances and purchases were made and when he had no real financial ability to pay for the debt service. Finally, the sudden change in the debtor's buying habits together with the proximity in time of the bankruptcy and the credit purchases leads to a conclusion that the debtor did not intend to pay for the charges when made and did intend to deceive the plaintiff through the continued use of the credit card.

Consequently, the entire credit card debt owed to the plaintiff is nondischargeable under § 523(a)(2)(A).

IT IS SO ORDERED.